IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PAUL NAVICKY,

        Plaintiff,

   v.

AARON GEVATOSKY, BENTON
COUNTY SHERIFF'S OFFICE,
BRENT IVERSON,

        Defendants.

Case No. 6:12-cv-00567-AA
OPINION AND ORDER

---

Paul Navicky
2634 N.W. Satinwood Lane
Corvallis, OR 97330
    Pro se plaintiff

Robert E. Franz, Jr.
Cheri P. Reynolds
Law Office of Robert E. Franz, Jr.
P.O. Box 62
Springfield, OR 97477
    Attorneys for defendants

Page 1 - OPINION AND ORDER

AIKEN, Chief Judge:

Defendants Aaron Gevatosky, Brent Iverson and the Benton County Sheriff's Office ("BCSO") move for summary judgment.[1] For the reasons set forth below, defendants' motion is granted and this case is dismissed.

## BACKGROUND

On April 9, 2010, dispatch reported to the BCSO that someone had called a Benton County Mental Health caseworker expressing concern about the safety and well-being of Jana Hughes, plaintiff's roommate. Specifically, the anonymous caller "reported that Ms. Hughes had a history of mental illness, her caretaker's name was Paul, he was not giving Ms. Hughes her medication, he was giving Ms. Hughes 'meth,' there was a lot of drug use in the residence, and she was locked in a room and had been beaten." Gevatosky Decl. pg. 2 & Ex. 101. Accordingly, Gevatosky and Iverson, deputies with the BCSO, were dispatched separately to plaintiff's mobile home to perform a welfare check on Hughes. When Iverson arrived, an adult male was standing in plaintiff's driveway. Iverson had a brief exchange with this individual, later identified as Roy Shinall, before the individual turned and called out for plaintiff while

---

[1] BCSO seeks dismissal because it is not a separate legal entity subject to suit. BCSO is correct. Ovitsky v. Wash. Cnty. Victim Assistance, 2013 WL 1767946, *4 (D. Or. Apr. 20, 2013). Because plaintiff is proceeding pro se in this matter, the Court construes plaintiff's allegations against BCSO as though they are asserted against Benton County.

Page 2 - OPINION AND ORDER

entering the mobile home. When Gevatosky arrived moments later, plaintiff came outside and identified himself. Gevatosky and Iverson informed plaintiff that they needed to perform a welfare check on Hughes and asked if they could enter his residence to speak with her. Plaintiff repeatedly refused to let Gevatosky and Iverson enter his home without a warrant. Plaintiff, however, indicated that he was willing to bring Hughes outside to the deputies.

Instead, Gevatosky went to the door of plaintiff's home and called out for Hughes.[2] After receiving no response, Gevatosky entered plaintiff's residence while plaintiff and Iverson remained outside. Gevatosky located Hughes and determined she was safe. Pursuant to that task, he noticed a glass pipe containing a white crystalline substance sitting in a cigarette ashtray in the front bedroom. Subsequently, plaintiff and Iverson entered the residence and Gevatosky read plaintiff his Miranda rights. Gevatosky then asked plaintiff who owned the pipe. Plaintiff did not directly respond, but stated that Shinall and his girlfriend had been over, and that the pipe was not there when he left his house earlier that day.

While in plaintiff's mobile home, Gevatosky also noticed an unplugged 34-inch Sharp television and a laptop computer sitting on top of a bag. The bag contained an identification card bearing the

---

[2] Plaintiff contends that Gevatosky did not knock or call out for Hughes. See Navicky Decl. pg. 2.

Page 3 - OPINION AND ORDER

name "John E. Kubitz." Aware that no one by that name lived at plaintiff's residence, Gevatosky called surrounding law enforcement agencies to see if they had any theft cases with a victim by that name. Linn County informed Gevatosky that a burglary report had been filed by a "John E. Kubitz" in Socio, Oregon, that same day. Linn County explained that a Panasonic 50-inch television, a Sharp 34-inch television, an HP laptop computer and a U.S. Post Office lock box were among the items missing. Iverson relayed to Gevatosky that he saw what appeared to be a large television in the back seat of plaintiff's car. Plaintiff gave the deputies permission to search his car. During the search, the deputies found a 50-inch Panasonic television and three backpacks, which contained various items, including a U.S. Post Office lock box, crowbars, gloves and flashlights.

Thereafter, plaintiff and the deputies re-entered his mobile home. Gevatosky removed the glass pipe from the front bedroom and placed it on the kitchen counter. Gevatosky then vacated the kitchen, leaving plaintiff alone therein. Moments later, upon his return to the kitchen, Gevatosky noticed that the pipe was no longer where he had placed it. He asked plaintiff where the pipe went and plaintiff responded, "What pipe?" Gevatosky Decl. pg. 5.

Given these circumstances, Gevatosky determined that he had probable cause to arrest plaintiff for tampering with physical evidence, Or. Rev. Stat. § 162.295; theft of lost, mislaid or

Page 4 - OPINION AND ORDER

misdelivered property, Or. Rev. Stat. § 164.065; theft by receiving, Or. Rev. Stat. § 164.095; burglary in the first degree, Or. Rev. Stat. § 164.225; criminal trespass in the first degree, Or. Rev. Stat. § 164.255; and possession of methamphetamine, Or. Rev. Stat. § 475.894. Plaintiff was taken into custody and transported to the Benton County Jail. Gevatosky spoke with plaintiff at the jail and received consent to go back and search his mobile home. During the subsequent search, Iverson located the missing glass pipe and found four plastic bindles containing a white crystalline substance. Gevatosky also noticed several tools and numerous miscellaneous items of significant value scattered throughout the residence, at which point Gevatosky decided to obtain a search warrant.

Prior thereto, Gevatosky met with a deputy from the Linn County Sheriff's Office. Gevatosky showed the deputy digital photos of the U.S. Post Office lock box located in plaintiff's car. The Linn County deputy confirmed that the lock box was an exact match to the one reported stolen by "John E. Kubitz." After obtaining a warrant, Gevatosky returned to plaintiff's home and executed a search. Plaintiff was jailed four days prior to posting bail. The charges against him were eventually dismissed.

On April 2, 2012, plaintiff filed a complaint in this Court, alleging: (1) deprivation of his Fourth Amendment rights in violation of 42 U.S.C. § 1983; and (2) loss of seized property and

Page 5 - OPINION AND ORDER

false imprisonment under Oregon law.[3] On May 7, 2014, defendants moved for summary judgment.

## STANDARD

Summary judgment is appropriate if the pleadings, depositions, affidavits, answers to interrogatories, and admissions on file, if any, show "that there is no genuine dispute at to any material fact and the [moving party] is entitled to judgment as a matter of law." Fed R. Civ. P. 56(a). Substantive law on an issue determines the materiality of a fact. T.W. Elec. Servs., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987). Whether the evidence is such that a reasonable jury could return a verdict for the nonmoving party determines the authenticity of a dispute. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The moving party has the burden of establishing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477

---

[3] Plaintiff does not delineate in his complaint which claims are asserted against which defendants. Nevertheless, the Court construes his 42 U.S.C. § 1983 claim as though it is asserted solely against Gevatosky and Iverson, as plaintiff has not provided any argument or evidence indicating that a Benton County policy, custom or practice deprived him of his constitutional rights. Indeed, the only discussion of this issue appears in plaintiff's response, in which he briefly refers to an article about BCSO losing valuables from its evidence room. See Pl.'s Resp. to Mot. Summ. J. 5-6; see also Navicky Decl. pg. 3. This article in inadmissible. See Fed. R. Evid. 401; Fed. R. Evid. 801. Additionally, this article is insufficient to prove that a Benton County policy or custom was the moving force behind the alleged constitutional violations at issue here. See Rosenfeld v. Corvallis Police Dep't, 2013 WL 1857108, *3 (D. Or. May 1, 2013) (citations omitted).

Page 6 - OPINION AND ORDER

U.S. 317, 323 (1986). If the moving party shows the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial. Id. at 324.

Special rules of construction apply when evaluating a summary judgment motion: (1) all reasonable doubts as to the existence of genuine issues of material fact should be resolved against the moving party; and (2) all inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. T.W. Elec., 809 F.2d at 630.

**DISCUSSION**

This dispute centers on whether defendants' warrantless search of plaintiff's home was justified by the emergency exception to the Fourth Amendment. Iverson and Gevatosky contend they did not violate plaintiff's constitutional rights. In the alternative, Iverson and Gevatosky argue that, regardless of the legality of their search and seizure, they are entitled to qualified immunity. Additionally, defendants assert that plaintiff's state law tort claims must be dismissed because he failed to furnish timely notice under the Oregon Torts Claim Act ("OTCA").

The Court must address one preliminary issue before reaching the substantive merits of defendants' motion.

Plaintiff argues that defendants' counsel failed to confer with him prior to filing the present motion. See Pl.'s Resp. to

Page 7 - OPINION AND ORDER

Mot. Summ. J. at 6. Pursuant to this District's Local Rules, parties are required to certify in each motion that they "made a good faith effort through personal or telephone conferences to resolve the dispute and have been unable to do so." LR 7-1(a)(1). The Court "may deny any motion that fails to meet this certification requirement." LR 7-1(a)(3).

Defendants state that, on February 20, 2014, counsel spoke with plaintiff regarding this case and informed him that "the[y] intended to file a motion for summary judgment once discovery was complete." Reynolds Decl. pg. 2. According to defendants, it was clear at that time that the parties "would not be able to reach an agreement," such "that no further conferral was necessary or required under Local Rule 7-1" prior to moving for summary judgment. Id. Plaintiff does not dispute defendants' assertion. Under these circumstances, the Court finds that defendants adequately conferred.

I. 42 U.S.C. § 1983 Claim

To prevail on a 42 U.S.C. § 1983 claim, a plaintiff must demonstrate that: (1) the conduct complained of deprived him of an existing federal constitutional or statutory right; and (2) the conduct was committed by a state actor or a person acting under color of state law. L.W. v. Grubbs, 974 F.2d 119, 120 (9th Cir. 1992), cert. denied, 508 U.S. 951 (1993). It is undisputed that Gevatosky and Iverson qualify as state actors for the purposes of

Page 8 - OPINION AND ORDER

42 U.S.C. § 1983. The sole issue is whether Gevatosky or Iverson violated plaintiff's federal rights, or are otherwise entitled to qualified immunity.

A federally recognized liberty interest to be free from unreasonable searches and seizures exists under the Fourth Amendment.[4] See United States v. Sharpe, 470 U.S. 675, 682 (1985). "It is a basic principle of Fourth Amendment law that searches and seizures inside a home without a warrant are presumptively unreasonable." Payton v. New York, 445 U.S. 573, 586 (1980) (citation and internal quotations omitted). This presumption may be rebutted, however, where an emergency exists ("emergency exception"). United States v. Struckman, 603 F.3d 731, 738 (9th Cir. 2010) (citations omitted).

A.  Emergency Exception

The emergency exception to the Fourth Amendment applies when: "(1) considering the totality of the circumstances [known to the officers at the time of the warrantless intrusion], law enforcement had an objectively reasonable basis for concluding that there was

---

[4] Although difficult to decipher, plaintiff's complaint and briefs also assert that defendants violated his substantive due process rights. Where, as here, "a particular constitutional amendment provides an explicit textual source of constitutional protection that amendment, not the more generalized notion of substantive due process[,] must be the guide for analyzing these claims." Pelster v. Walker, 185 F.Supp.2d 1185, 1189 (D. Or. 2011) (citation and internal quotations and ellipses omitted). Accordingly, to the extent plaintiff asserts a violation of the Fourteenth Amendment, his claim is subsumed by this Court's discussion of the Fourth Amendment.

Page 9 - OPINION AND ORDER

an immediate need to protect others or themselves from serious harm; and (2) the search's scope and manner were reasonable to meet that need." United States v. Snipe, 515 F.3d 947, 952 (9th Cir. 2008). If, while responding to an emergency, law enforcement "discovers evidence of illegal activity, that evidence is admissible even if there was not probable cause to believe that such evidence would be found." Id. (citation omitted).

i. Totality of the Circumstances

It is undisputed that Gevatosky and Iverson were dispatched to plaintiff's residence in response to a report that Hughes had a history of mental illness and was being abused, not given her medication and drugged with methamphetamine. See Gevatosky Decl. pg. 2. The anonymous tip specifically identified plaintiff's address and the fact that a man named "Paul" would be at the residence with Hughes.[5] Id. When Gevatosky and Iverson arrived,

---

[5] Plaintiff argues that the search was illegal because the anonymous tip turned out to be fake, such that there was no reason for defendants to enter his home absent hearing screams or other patent signs of distress from outside. See Pl.'s Resp. to Mot. Summ. J. 3-4. Plaintiff's argument fails to account for the fact that this Court must analyze the emergency exception based on the information known to officers at the time of the warrantless intrusion. Because plaintiff has not set forth any argument or evidence indicating that Gevatosky or Iverson knew or reasonably should have known that the anonymous tip was inaccurate, Gevatosky and Iverson's investigation into Hughes' well-being, which included entering plaintiff's home without consent or a warrant, was proper. Moreover, plaintiff neither lists the party allegedly responsible for the anonymous tip as a defendant in this case, nor does he introduce any evidence, beyond mere conjecture in the form of a sworn declaration, that the anonymous tipster deliberately or recklessly made false

Page 10 - OPINION AND ORDER

they met with plaintiff, who confirmed that his name was Paul and that Hughes resided at, and was currently present within, his mobile home; corroboration of these facts provided apparent validity to the anonymous tip. Id. at pgs. 2-3. Further, plaintiff refused to allow the officers access to Hughes without first contacting her. Gevatosky called out for Hughes but did not receive a response. Id. at pg. 3.

In sum, because "the report [Gevatosky] received was that [Hughes] was locked in a room, being beaten, given 'meth,' refused access to her medication, and Mr. Navicky was strongly protesting the welfare check," in conjunction with the fact that "an unidentified man had rushed inside the mobile home as soon as [the deputies] arrived, he had not come back outside, and there was no response from the man or Ms. Hughes when [Gevatosky] stood at the door and called for Ms. Hughes," Gevatosky "believed Ms. Hughes could be in imminent danger" and "there was an immediate need to protect Ms. Hughes from serious harm," such that he "decided [to] immediately enter the mobile home to perform the welfare check." Id.; see also Michigan v. Fisher, 558 U.S. 45, 49 (2009) ("[o]fficers do not need ironclad proof of a likely serious, life-threatening injury to invoke the emergency aid exception") (citation and internal quotations omitted). Plaintiff has not

---

statements. See Reed Decl. pg. 3. As a result, the anonymous tipster's alleged conduct is not actionable at this stage in the proceedings. See Clark v. Wells Fargo Bank, N.A., 2014 WL 2998600, *3 (D. Or. July 1, 2014).

Page 11 - OPINION AND ORDER

Case 6:12-cv-00567-AA   Document 75   Filed 07/24/14   Page 12 of 17

furnished any argument or evidence that contravenes these facts. <u>See generally</u> Navicky Decl.; Reed Decl. Therefore, given the totality of the circumstances, the Court finds that Gevatosky and Iverson had an objectively reasonable basis for concluding that there was an immediate need to protect Hughes from serious harm at the time of the warrantless entry.

    ii. <u>Search's Scope and Manner</u>

Plaintiff does not contest that the door to the front room, which contained illegal items, was closed. <u>See generally</u> Navicky Decl.; Reed Decl. Indeed, Gevatosky and Reed both note that drug paraphernalia and potentially stolen goods were apparent in the front room. Thus, irrespective of the precise timing of the welfare check, the record demonstrates that Gevatosky entered plaintiff's mobile home and promptly observed evidence of illegality in plain view. Moreover, because the deputies were responding to a call stating, in part, that "Paul" had given Hughes methamphetamine, and that there "was a lot of drug use in the house," it was reasonable for Gevatosky to search plaintiff's room and Hughes' room for evidence of illegal substances, even after Hughes informed Gevatosky that plaintiff was not abusing her. Gevatosky Decl. pg. 4. This is especially true once drugs and other paraphernalia had been discovered. The manner and scope of defendants' search was reasonable.

Furthermore, given this evidence, Gevatosky and Iverson had

Page 12 - OPINION AND ORDER

probable cause to arrest plaintiff. "If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender." Atwater v. City of Lago Vista, 532 U.S. 318, 354 (2001). "Probable cause exists when, under the totality of the circumstances known to the arresting officers, a prudent person would have concluded that there was a fair probability that [the defendant] had committed a crime." United States v. Buckner, 179 F.3d 834, 837 (9th Cir. 1999) (citation omitted).

Here, it is undisputed that illegal substances and potentially stolen goods were present in plaintiff's home and vehicle. Gevatosky "removed the ashtray containing the glass pipe with white crystalline substance from the bedroom and placed it on the kitchen counter"; plaintiff "was left alone in the kitchen for a moment . . . and when [Gevatosky] returned to the kitchen, the pipe [that was] placed on the kitchen counter had disappeared." Gevatosky Decl. pg. 5. Accordingly, Gevatosky had probable cause to arrest plaintiff for tampering with physical evidence and possession of methamphetamine, in violation of Or. Rev. Stat. §§ 162.295, 475.89. See id. at pg. 5-6, 11-12. Similarly, probable cause supported plaintiff's arrest for theft. Gevatosky noticed suspicious items while in plaintiff's home, which he later confirmed were the same or similar to those that had been reported stolen from a "John E.

Page 13 - OPINION AND ORDER

Kubitz." <u>Id.</u> at pg. 6-11; <u>see</u> Or. Rev. Stat. §§ 164.065, 164.095, 164.225, 164.255.

The fact that plaintiff's criminal charges were ultimately dismissed "does not make the existence of probable cause more or less likely." <u>De Anda v. City of Long Beach</u>, 7 F.3d 1418, 1422 (9th Cir. 1993). Thus, because Gevatosky and Iverson had the requisite probable cause to arrest plaintiff and transport him to the Benton County Jail, the subsequent dismissal of plaintiff's charges is immaterial. As such, Gevatosky and Iverson did not violate plaintiff's Fourth Amendment rights.

B. <u>Qualified Immunity</u>

Qualified immunity shields government officials from civil liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982) (citations omitted). To ascertain if a government actor is entitled to qualified immunity, the court determines whether: (1) the alleged misconduct violated a right; and (2) that right was clearly established at the time of the alleged misconduct. <u>Pearson v. Callahan</u>, 555 U.S. 223, 236 (2009). In other words, if the government actor reasonably believed that his or her conduct complies with the law, summary judgment based on qualified immunity is appropriate. <u>Id.</u> at 244; <u>see also</u> <u>Malley v. Briggs</u>, 475 U.S. 335, 341 (1986) (qualified immunity protects "all but the

Page 14 - OPINION AND ORDER

plainly incompetent or those who knowingly violate the law").

Even if plaintiff could establish a violation of his constitutional rights, Gevatosky and Iverson would nonetheless be entitled to qualified immunity under the undisputed facts. As discussed above, Gevatosky entered plaintiff's home reasonably believing that it was necessary to protect Hughes from imminent danger. See United States v. Black, 482 F.3d 1035, 1038 (9th Cir. 2006) ("[w]hether the actions of the police are objectively reasonable is to be judged by the circumstances known to them"). Once inside, Gevatosky and Iverson observed illegal drugs, drug paraphernalia and stolen goods within plain view; this evidence created probable cause for plaintiff's arrest. See Sheehan v. City and Cnty. of S.F., 743 F.3d 1211, 1216 (9th Cir. 2014) (when officers conduct a welfare search with the objective of rescue, they "are expected to err on the side of caution"). As such, even assuming the emergency exception did not apply and that Iverson or Gevatosky violated plaintiff's rights, their conduct was nonetheless reasonable in light of the totality of the circumstances. Iverson and Gevatosky are therefore entitled to qualified immunity.

Finally, to the extent that plaintiff claims Iverson and Gevatosky violated his constitutional rights by losing or auctioning off several items of his property that were seized during the search of his home, plaintiff's argument is unavailing.

Plaintiff alleges in his complaint that $20,000 dollars worth of property was seized from his home and never returned; he identifies the items missing as those listed in the attached evidence report. See Compl. pg. 3-3B. Plaintiff, however, provides no proof of the value of this property or that it actually belonged to him. See generally Pl.'s Resp. to Mot. Summ. J.; Pl.'s Surreply to Mot. Summ. J.; Navicky Decl. In fact, several of the listed items match those that had been reported stolen by "John E. Kubitz." Moreover, neither Iverson nor Gevatosky were responsible for the alleged damage to or loss of this property. See Gevatosky Decl. pg. 14; Iverson Decl. pg. 3. For these reasons, defendants' motion is granted as to plaintiff's 42 U.S.C. § 1983 claim.

II. State Law Claims

Plaintiff's state law claims are subject to the notice provisions of the OTCA. See Or. Rev. Stat. § 30.275. The OTCA provides that formal or actual notice of a claim must be given to a public body "within 180 days after the alleged loss or injury." Id. The requirement that timely notice be given is a condition precedent to recovery under the OTCA. In other words, if this requirement is not satisfied, a plaintiff is deprived of the right to assert a claim. Tyree v. Tyree, 116 Or.App. 317, 320, 840 P.2d 1378 (1992), rev. denied, 315 Or. 644, 849 P.2d 525 (1993).

It is undisputed that plaintiff failed to furnish the requisite notice at any point prior to filing his complaint, which

was commenced more than 180 days after his state law claims accrued. See Croney Decl. pg. 2; Pl.'s Resp. to Mot. Summ. J. at 5. Because plaintiff neglected to comply with the requirements of the OTCA, his state law tort claims for false imprisonment and loss of seized property are dismissed. Furthermore, plaintiff's state law claims fail for the same reasons as his 42 U.S.C. § 1983 claim. Defendants' motion is granted as to plaintiff's state law claims.

**CONCLUSION**

Defendants' motion for summary judgment (doc. 58) is GRANTED. This case is DISMISSED and all pending motions (including docs. 71 & 73) are DENIED as moot.

IT IS SO ORDERED

Dated this 24th day of July 2014.

_____
Ann Aiken
United States District Judge